233 P.2d 425

**MILO THEATER CORP. v. NATIONAL THEATER SUPPLY et al.**

No. 7678.

Supreme Court of Idaho.

July 2, 1951.

436

Elder, Elder & Smith, Coeur d'Alene, and Thomas Alderson, Seattle, Wash., for appellant George C. Blair.

Wm. S. Hawkins and E. L. Miller, Coeur d'Alene, for appellants National Theater Supply and O. L. Chiniquy.

Harold S. Purdy, Coeur d'Alene, for respondent.

PORTER, Justice.

Mr. Edward Metzgar is president of respondent corporation and acted for it in the transactions involved in this suit. Appellant O. L. Chiniquy is the general agent of appellant corporation, with offices in Seattle, Washington. Appellant George C. Blair is a dealer in theaters.

In the spring of 1948, respondent was the owner of a building in Smelterville, Idaho, which had been used as a theater but had been converted into a club. Respondent was desirous of reopening the building as a theater. To do so, it was necessary for respondent to purchase theater equipment. About April 1, 1948, Chiniquy called upon Metzgar in Coeur d'Alene with reference to the sale of such equipment. Metzgar and Chiniquy went to Smelterville, examined the building and made an estimate of the amount of equipment necessary to reopen the theater and the cost thereof.

Metzgar advised Chiniquy respondent did not have the money to purchase the equipment or to put the building in suitable condition, and that it would take about $7,000 to make the down payment on the equipment and to repair the building. He stated he had been making efforts to get the money locally and he would have to pay a premium of $2,500 to secure the loan. Chiniquy said for that amount of premium he could arrange the loan. He thereupon returned to Seattle.

After several telephone conversations, Metzgar went to Seattle and met with Chiniquy and Blair in the offices of appellant corporation. The parties talked over the proposed loan of $7,000 and the $2,500 premium; the loan to be secured by a second mortgage on the theater upon which there was a first mortgage of $5,000. Metzgar was told that the money for the loan was to be furnished by Blair. Blair called in his attorney, Mr. John Martin, and the proposed deal was explained to him. Mr. Martin advised Blair he could not make such a deal, that it "would be a bald face case of usury and couldn't be handled in the State of Washington"; and that he

was not familiar with the usury laws of Idaho and the matter should be handled by an Idaho attorney. Mr. Martin further suggested there were ways of getting around the usury laws and that the appearance of usury might be avoided by making a sale or pretended sale of the theater fixtures to Blair and adding the premium for the cash loan to the purchase price of the fixtures on a conditional sales contract from Blair to respondent. Mr. Martin also advised against a second mortgage and suggested that the loan be increased sufficiently to take up the first mortgage. The deal was not completed and Metzgar returned to Coeur d'Alene.

Later, Chiniquy telephoned Metzgar they had decided to make the loan for $12,000; that the premium would be $4,000; and the note and mortgage would be in the sum of $16,000.

On or about April 20, Blair and Chiniquy came to Coeur d'Alene and with Metzgar, called at the offices of attorney Knudson for the purpose of completing the transaction. Mr. Knudson was instructed to prepare a promissory note in the sum of $16,000 in favor of Blair, due in one year, secured by a mortgage on the Smelterville property, and a conditional sale contract from Blair to respondent covering the equipment involved.

That same day, when the parties were in Spokane, Washington, Chiniquy computed the cash price for the equipment to be furnished as $6,342; and the time price on conditional contract of sale to be $6,672.44, payable $1,842 down and $397.54 per month for one year. (Plf's. Exh. No. 3)

After Chiniquy and Blair returned to Seattle, Chiniquy wrote a letter to attorney Knudson (Plf's. Exh. No. 15.), as follows:

"April 22, 1948

"Mr. Knutson, Attorney
"Coeur d'Alene, Idaho
"Dear Mr. Knutson:

"After leaving your office we talked over and decided to rearrange the loan to Mr. Ed Metzger and his corporation. As Mr. Metzger may have told you he has increased his purchase of the equipment in the amount of $655.00. Added to the $5687.00, makes it $6342.00, plus interest of $330.44, of which we want to add another $4000.00, making the Conditional Sales Contract for the amount of $10,672.44. Payments on this Conditional Contract are to be $1842.00, on the signing of the Contract and there is to be eleven monthly payments of $397.54, and the twelfth payment to be for $4,372.94. This covers the Conditional Contract with the exception of the list and serial numbers of the various pieces of equipment to be included and described on the Order and Conditional Contract.

"As to the first mortgage; the first mortgage will then be for $12,000.00, and this is to be secured by first lean on the property known as the Gem Theatre, Smelterville, Idaho. The interest to be charged on the $12,000.00, is to be $300.00, for the year.

This is a flat interest and this mortgage and the Conditional Sales Contract should call for the highest interest rate the State will permit after maturity.

"I hope I have made myself clear in this matter and if there are any further questions, please feel free to call me collect by telephone.

"Respectfully,
"/s/ O. L. Chiniquy
"Oscar L. Chiniquy

"OLC/bb
"PS. This letter is written by me for Mr. George Blair and has his full approval."

Chiniquy, at the same time, wrote to Metzgar telling him of the change of plans and stating that "other than juggling the figures, it is the same as we originally planned."

Under date of May 12, 1948, respondent signed and delivered its note and mortgage to Blair due in one year, in the sum of·$12,300. At the same time, a conditional sale contract from George C. Blair to respondent was executed covering the equipment in question, in the principal sum of $10,672.44, payable $1,842 cash and the sum of $397.54 on the 10th of each month for eleven consecutive months and the sum of $4,372.94 on May 10, 1949.

In the meantime, appellant Blair gave to respondent his personal check for $500 when in Coeur d'Alene, and caused to be forwarded to attorney Knudson a draft for $11,500. With this money, Knudson paid off the first mortgage and certain liens and taxes on the building, paid the $1,842 first payment on the equipment and turned the balance of the money to respondent. The equipment was thereupon shipped by appellant corporation and received by respondent.

Appellants testified an oral sale of the theater equipment was made by appellant corporation to Blair prior to the execution of the conditional sale contract between Blair and respondent. On August 17, 1948, a written conditional sale contract was executed between the National Theater Supply and Blair covering the same equipment for the time price of $6,591.26 with the down payment of $1,842 and monthly payments of $395.78 for one year. This conditional sale contract was fully paid by Blair pursuant to its terms.

During the succeeding year, respondent made nine monthly payments on its conditional sale contract in the sum of $397.54 each. On May 31, 1949, respondent paid to Attorney Knudson for George C. Blair, the sum of $12,652.58 which sum represented the promissory note and $352.58 initial payment on a renewal conditional sale contract. The new conditional sale contract was between Blair and respondent, covered the same equipment, was in the principal sum of $5,652.58, representing the amount unpaid by the terms of the original conditional sale contract plus the sum of $400, and was payable in twelve consecutive monthly payments commencing June 10, 1949.

On May 31, 1949, respondent commenced this action to recover the alleged usurious interest together with the statutory penalty. Appellants answered and the cause was tried to the court sitting without a jury. The court made findings of fact and conclusions of law favorable to respondent and entered judgment against all appellants for the usurious interest alleged to have been reserved and paid, and twice the amount thereof as provided by statute. Appellant, George C. Blair, duly appealed from such judgment against him to this court. Appellants, National Theater Supply and O. L. Chiniquy, have likewise duly appealed from the judgment rendered against them.

This action is prosecuted under the provisions of 27–1905, I.C., which provides parties may agree in writing for the payment of any rate of interest on money due or to become due on any contract not to exceed the sum of eight per cent per annum, and the provisions of Section 27–1907, I.C., reading as follows: "The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter, when knowingly done, shall be deemed a forfeiture by the person so taking, receiving, reserving or charging to the benefit of the person paying or being charged, of the entire interest which the contract carries with it or which has been agreed to be paid thereon, plus twice the amount of such interest. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back the amount of the interest thus paid from the person taking or receiving the same, plus twice the amount of such interest in addition. No indorsee in due course of negotiable paper is affected by any usury exacted by any former holder of such paper unless he have actual notice of the usury previous to his purchase."

By his specifications of error, appellant Blair challenges substantially all the findings of fact of the trial court on the ground that the evidence is insufficient to support the same, and alleges the court erred in failing to adopt the findings of fact submitted by such appellant, which were favorable to him. Without discussion of each finding of fact made or each finding of fact refused, we will consider the questions raised by such appellant on his appeal.

■ Appellant Blair contends he purchased the equipment in question from appellant National Theater Supply and had a right to add to that purchase price the sum of $4,000 on his sale to respondent as profit or as the difference between a cash price and a time price. It appears to be true a seller may offer to sell at a designated price for cash or at a higher price on credit and that a credit sale at the advanced price will not constitute usury although the difference exceeds the lawful rate of interest that might be charged on the cash price so long as the transaction is not merely a form or device for defeating the usury laws. 55 Am.Jur. 338, par. 21; Anno., 48 A.L.R. 1442; Anno., 152 A.L.R. 598. The evidence in this case tends to show that the

sale or pretended sale of the equipment to appellant Blair and the resale of same to respondent with the addition of $4,000 to the last payment under the conditional sale contract between Blair and respondent, was a mere device to cover up the $4,000 premium reserved and charged for the loan of $12,000 for one year. Where the usury does not appear on the face of the instruments, the court has the right to consider all the facts and circumstances to determine the real nature of the transaction. Olson v. Caufield, 32 Idaho 308, 182 P. 527. The evidence is sufficient to justify the court's finding of usury.

■ Appellant Blair urges that in order to invoke the penalties provided in Section 27-1907, I.C., the taking or reserving of the usurious interest must have been "knowingly" done which means intentionally and designedly. This may be conceded. Anderson v. Creamery Package Mfg. Co., 8 Idaho 200, 67 P. 493, 56 L.R.A. 554; Easton v. Butterfield Live Stock Co., 48 Idaho 153, 279 P. 716. He further contends evidence of his knowledge that the transaction would be usurious in the State of Washington is insufficient to show he knew the transaction was usurious in Idaho. In his testimony, he admits he was warned by his attorney in Washington the taking of the $4,000 premium on the $12,000 loan for one year would be usury. While he may not have known the precise lawful rate of interest in Idaho, he knew the addition of the $4,000 premium to the last payment on the conditional sale contract was but a device to attempt to evade the usury laws of Idaho. The evidence is substantial and sufficient to sustain the court's finding that such appellant knowingly reserved and received usurious interest.

■ The argument of appellant Blair that the evidence shows the parties were in pari delicto and therefore respondent is precluded from recovery is not well taken. Under the usury laws, the borrower is not generally considered to be in pari delicto with the lender. Stock v. Meek, 35 Cal.2d 809, 221 P.2d 15; Seebold v. Eustermann, 216 Minn. 566, 13 N.W.2d 739, 152 A.L.R. 585; 55 Am.Jur. 393, par. 101.

Appellants National Theater Supply and O. L. Chiniquy urge the court erred in entering judgment against them on the ground of the insufficiency of the evidence to sustain such judgment. They further urge the court erred in entering its finding of fact that they knowingly reserved, charged, demanded and received usurious interest from the plaintiff on the ground there was no evidence to support such finding. Such appellants are not named parties in the conditional sale contracts between appellant Blair and respondent or in the $12,300 promissory note and the mortgage on the building securing same. The evidence does not disclose that either of such appellants advanced any of the $12,000 but, on the contrary, shows affirmatively that such money was advanced by appellant Blair. Neither does the evidence disclose such appellants reserved or received any part of the $4,000 premium charged for the loan.

442

The evidence only discloses that such appellants reserved and received the regular time price for the equipment which they sold.

 The provisions of Section 27-1907, I.C., being quasi penal and providing for a forfeiture will not be construed to include matters or persons not expressly enumerated therein. Finney v. Moore, 9 Idaho 284, 74 P. 866; Seebold v. Eustermann, supra; United States v. Harris, 177 U.S. 305, 20 S.Ct. 609, 44 L.Ed. 780. Such appellants, not having taken, received, reserved or charged usurious interest, do not fall within the terms of the statute. The fact that such appellants, by the sale or pretended sale of the equipment to appellant Blair, made possible his reservation of usurious interest in the first conditional sale contract to respondent, and the fact that such appellants carried on the negotiations for the transaction, do not bring them within the class of persons against whom penalties may be assessed under the usury statutes. The trial court erred in entering judgment against appellants National Theater Supply and O. L. Chiniquy, as such judgment is not supported by the evidence.

The judgment against appellant Blair is affirmed. The judgment against appellants National Theater Supply and O. L. Chiniquy is reversed. Costs awarded to respondent against appellant Blair and to appellants National Theater Supply and O. L. Chiniquy against respondent.

GIVENS, C. J., and TAYLOR, THOMAS and KEETON, JJ., concur.