290 P.2d 738

Herman D. FREEDMAN, Plaintiff, Cross-Defendant and Appellant,

v.

Nina HENDERSHOTT and Georgia Reynolds, Defendants, Cross-Plaintiffs and Respondents.

No. 8338.

Supreme Court of Idaho.

Nov. 30, 1955.

Swayne & McNichols, Orofino, for respondents.

Thomas A. Madden, Paul C. Keeton, Lewiston, for appellant.

ANDERSON, Justice.

November 29, 1952, Nina Hendershott and Georgia Reynolds, respondents—hereinafter referred to as defendants—purchased under an escrow contract a barroom and hotel at Pierce, Idaho, known as Key Hotel, from Rex and Lennis Weaver for the sum of $18,000. Defendants went into possession January 1, 1953, and remained in possession at all times up to the trial of this case, July 2, 1954. They were to make monthly payments of $250 to July 1, 1953, then pay $3,250, and on August 1, 1953, and each month thereafter, to pay $400 until the full amount, together with five per cent interest, was paid on the escrow contract. They made only two payments of $250, one being February 6 and the other March 6, 1953. The defendants were so short of funds that they could not meet their payments nor their other bills and license fees. The Weavers were delinquent on a mortgage held by the Orofino bank, also unable to pay delinquent taxes, and Mr. Weaver was in a hospital in Vancouver, Washington.

The latter part of June, 1953, the defendants and Mrs. Weaver talked with the plaintiff (appellant) about a loan on the hotel. He was about to leave for New York, so nothing further was done until his return. July 7, 1953, according to the defendants, the plaintiff agreed to loan them $8,500, for which they were to pay $10,000 in monthly payments.

Defendants testified that plaintiff stated that his attorney advised him that in order to keep out of trouble it would be necessary to have a sale of the hotel and its furnishings on paper only. The parties agreed to meet Saturday, July 11, 1953, to complete the loan.

When they met July 11, plaintiff announced he would lend only $7,500, and wanted $11,000 in return, to be repaid within 22 months at the rate of $500 per month commencing August 16, 1953. Due to the plaintiff's reducing the amount he would lend from $8,500 to $7,500, it was necessary to remake the legal papers, so the parties agreed to meet Monday, July 13, 1953, to complete the transaction.

July 13, the changed papers were signed and $7,500 paid, of which $3,000 went to the defendants and $4,500 to the Weavers,

who gave a warranty deed and bill of sale to the plaintiff, and a title insurance policy for $12,000. Defendants' evidence discloses that it was understood at these meetings the defendants would give a $12,500 second mortgage on their equity in the property to Mrs. Weaver. The above-mentioned evidence was contradicted in many respects by the plaintiff, he claiming that the transaction was a bona fide sale.

Plaintiff contends that after buying from defendants Saturday, July 11, 1953, for $7,500, he looked for other purchasers until Monday, July 13, 1953, and then made a valid sale by accepting the best price he could get, namely $11,000 from the defendants.

At this time the defendants were delinquent approximately $4,000 on their escrow agreement with the Weavers, but no forfeiture of the contract had been made, nor had any notice of forfeiture been given.

The defendants made only two payments to the plaintiff, totaling $1,000, under the amended escrow agreement of July 13, 1953. They remained in possession of the premises at all times from January 1, 1953, to and including the trial of this case, which commenced in the district court on July 2, 1954.

December 11, 1953, plaintiff served upon defendants notice that plaintiff elected to terminate the amended escrow contract at the end of 30 days, should defendants still be in default. The default continued, and April 5, 1954, plaintiff commenced this action to obtain possession of the property. Defendants filed an answer and cross-complaint, alleging the contract to be usurious, claiming that $3,500 interest was charged on a $7,500 loan which was made for a period of 22 months. The plaintiff answered the cross-complaint, denying that there was any usury in the transaction, claiming it was a sale and not a loan.

The trial court found against appellant's contention of a bona fide sale, and further found that the charge of $3,500 for the use of $7,500 for a period of 22 months constituted an interest charge of approximately 25 per cent per annum. The trial judge concluded that the facts disclosed usury, and that defendants should be relieved of the $3,500 interest charge, and that additionally they were entitled to receive from plaintiff twice the amount of the interest, making a total of $10,500. This was set off against the $10,000 due under the amended escrow contract, and judgment entered for the defendants against the plaintiff on their cross-complaint for $500.

Appellant assigns 11 specifications of error, which in substance and effect are that the judgment is contrary to the law and the evidence, and that it is not supported by competent and substantial evidence, in that the evidence discloses a sale and not a loan.

There is no dispute that if this transaction was actually a loan that the maximum rate of interest legally chargeable in Idaho under I.C. § 27–1905 would be not to exceed eight per cent per annum. Nor is it disputed that if the transaction was actually a bona fide sale and resale this statute and I.C. § 27–1907 would not be applicable.

I.C. § 27–1907 provides:

"Usury—Charging—Penalty—Indorsee in due course, exception.—The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter, when knowingly done, shall be deemed a forfeiture by the person so taking, receiving, reserving or charging to the benefit of the person paying or being charged, of the entire interest which the contract carries with it or which has been agreed to be paid thereon, plus twice the amount of such interest. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back the amount of the interest thus paid from the person taking or receiving the same, plus twice the amount of such interest in addition. No indorsee in due course of negotiable paper is affected by any usury exacted by any former holder of such paper unless he have actual notice of the usury previous to his purchase."

It has become an accepted and settled rule of law that to constitute usury there must be excessive interest or compensation on either a loan of money or forbearance or extension of time of payment on an existing debt. Bell v. Idaho Finance Co., 73 Idaho 560, 255 P.2d 715; 66 C.J., Usury, sec. 73–4a, p. 180; 91 C.J. S., Usury, § 16.

A transaction similar to the one now before us was held to be usurious in the case of Milo Theater Corp. v. National Theater Supply, 71 Idaho 435, 233 P.2d 425. Plaintiff corporation wished to convert a building it owned into a theater and purchase equipment for it. An officer of defendant corporation arranged for plaintiff to obtain a loan from defendant Blair at a "premium" of $4,000. The parties agreed that Blair should go through the motions of buying equipment from defendant corporation, and plaintiff should purchase it from Blair. Plaintiff was to give Blair a mortgage on its building for $12,000 (part of this went to pay off an existing mortgage), and the $4,000 "premium" was to be added to the price it paid Blair for the equipment. Holding the transaction to be usurious and affirming a judgment against Blair, the court said, 71 Idaho at page 440–441, 233 P.2d at page 428:

"The evidence in this case tends to show that the sale or pretended sale of the equipment to appellant Blair and the resale of same to respondent

with the addition of $4,000 to the last payment under the conditional sale contract between Blair and respondent, was a mere device to cover up the $4,000 premium reserved and charged for the loan of $12,000 for one year. Where the usury does not appear on the face of the instruments, the court has the right to consider all the facts and circumstances to determine the real nature of the transaction."

See also Olson v. Caufield, 32 Idaho 308, 182 P. 527; Calimpco, Inc., v. Warden, 100 Cal.App.2d 429, 224 P.2d 421; 55 Am.Jur., Usury, sec. 24, pp. 341–342; 154 A.L.R. 1079.

An annotation in 154 A.L.R. 1063, entitled "Transaction in form a sale, but accompanied by an agreement or option for repurchase by the vendor or a third person previously interested, as a loan, as regards usury law," at pp. 1067–1069, contains the following:

(P. 1067) "The question whether for the purpose of the usury law a transaction in the form of a sale of property with an option or agreement to repurchase at an advanced price payable in the future is what it purports to be or a loan has been held to depend upon the intention of the parties.

(P. 1068) "* * * It is not the subjective intention which controls, but their intention as gathered from all the circumstances of the particular case. The myth that the subjective intention of the parties affords a practicable criterion by which to test the nature of a transaction as a sale or loan was effectively rejected in Fiedler v. Darrin (1872) 50 N.Y. 437, where the court said: 'The intent which enters into and is essential to constitute usury is simply the intent to take or reserve more than seven per cent per annum for the loan or forbearance of money. * * * when an act is illegal the intent of the offender is immaterial. It will not avail one who deliberately fires his neighbor's house, to swear that he did not intend to commit arson; and one who deliberately and intentionally secures to himself $1,650 at the end of four months in return for a present advance of $1,500 cannot avoid the consequences of the act by testifying that he did not intend to take usury; that is, he intended to give the transaction a different name from that which the law gives it, and call that a purchase and sale which the law calls a loan of money, secured by mortgage.'

(Pp. 1068–1069) "'The real inquiry in every case is whether there has been a borrowing and lending at a greater rate of interest than the law allows; and this becomes purely a

question of fact, to be determined from all the circumstances of the particular case. The law looks at the nature and substance of the transaction, and not to the color or form which the parties in their ingenuity have given it. No imaginable act or contrivance to cover up and conceal the usury will avail the parties. They will not be permitted successfully to evade the provisions of the statute by any conceivable scheme or expedient. The courts will follow them through all their shifts and devices, and ascertain the true character and design of the transaction. And if upon such investigation, it appears that there was in substance a loan at an illegal rate of interest, no matter what form or shape the contract has been made to assume, it will be declared to be usurious, and the proper remedy applied.' Ferguson v. Sutphen, 1846, 3 Gilman 547, 8 Ill. 547."

■ The evidence is substantial and sufficient to sustain the court's finding that the appellant made an usurious loan and that the purported sale and resale were merely a security device and a disguise for usury. It was a sale on paper only; plaintiff never took possession of the property.

■ Where the trial court, sitting as a court of equity, makes findings of fact based upon conflicting evidence, and there is evidence to support both theories of the case and from which reasonable men might draw different conclusions, such findings of fact will not be disturbed on appeal. McCarty v. Sauer, 64 Idaho 748, 755, 136 P.2d 742; Gore v. Richard Allen Mining Co., 61 Idaho 622, 105 P.2d 735.

■ The usury rule is a harsh rule, but is made for the beneficial purpose of protecting the necessitous debtor against extortion which he is practically helpless to resist. Such harshness appears to be the intent of the legislature as necessary to the elimination—or the holding to a minimum—of the exacting of usurious rates of interest. Where usurious interest has been reserved and charged as herein, three times the amount of said interest is forfeited by the lender to the borrower. This forfeiture is clearly affirmative, not merely negative, hence may be set off against both principal and interest, and if more than the balance due, to give effect to such affirmative forfeiture, judgment therefor should be entered in favor of the borrower as was correctly done herein. Cheney v. Overmyer, 64 Idaho 213, 129 P.2d 978.

Judgment affirmed. Costs to respondents.

TAYLOR, C. J., PORTER and SMITH, JJ., and SPEAR, District Judge, concur.