428 P.2d 961

Lloyd PETERSEN and JoAnn Petersen, husband and wife, and Dean J. Storer and Elaine B. Storer, husband and wife, Plaintiffs-Appellants,

v.

PHILCO FINANCE CORPORATION, and Day-Nite Coin-Op Dry Cleaning, Inc., Defendants-Respondents.

Ronald L. BIRD and Flora May Bird, husband and wife, Plaintiffs-Appellants,

v.

PHILCO FINANCE CORPORATION and Day-Nite Coin-Op Dry Cleaning, Inc., Defendants-Respondents.

PHILCO FINANCE CORPORATION, Plaintiff-Respondent,

v.

Lloyd PETERSEN and JoAnn Petersen, husband and wife, Dean J. Storer and Elaine B. Storer, husband and wife, and Ronald L. Bird and Flora May Bird, husband and wife, Defendants-Appellants.

No. 9881.

Supreme Court of Idaho.

June 16, 1967.

Sharp, Anderson & Bush, Idaho Falls, for appellants.

Hansen & Hansen, Idaho Falls, for respondents.

SPEAR, Justice.

The principal issue presented by this appeal is whether the Idaho law with respect to usury has application to the finance charge in a conditional sale contract. The appeal is from a determination of the legal rights and obligations of the parties with regard to the sale and purchase of certain coin operated dry cleaning equipment. The cases arose from three separate conditional sale contracts, and were consolidated for trial upon motion by the parties before the district court. One of the contracts, involving only a small amount of money, was eliminated prior to the entry of judgment.

Day-Nite Coin-Op Dry Cleaning, Inc. was the seller of the equipment. Under one contract, Ronald L. Bird and Flora May Bird, husband and wife, were the purchasers; and, under the other contract, Lloyd Petersen and JoAnn Petersen, husband and wife, and Dean J. Storer and Elaine B. Storer, husband and wife, were purchasers.

Both contracts were assigned by the seller to Philco Finance Corporation. The contract last referred to was modified by agreement between the parties, and the time for payments extended. The modifications were incorporated in an extension agreement signed by the parties; and, except for the modifications therein included, the original conditional sale contract remained in full force and effect.

The facts relating to the two contracts and the extension agreement involved in this appeal were stipulated by the parties. The facts stipulated are as follows:

*Contract dated December 1, 1961:*

On or about December 1, 1961, Ronald L. Bird and Flora May Bird, husband and wife, entered into a conditional sale contract with Day-Nite Coin-Op Dry Cleaning, Inc., for the sale by the latter and the purchase by the former of certain dry cleaning equipment. The contract provided for a cash price of $15,097.45 and a down payment of $1,009.75, leaving an unpaid balance of the cash price of $14,087.70. A finance charge of $3,381.05 was added to the balance of the cash price, making a total time balance of $17,468.75. The contract provided for the payment of this sum in 48 equal consecutive monthly installments of $363.97 each, beginning on February 1, 1962. By written assignment on the contract dated December 1, 1961, the contract was assigned by Day-Nite Coin-Op Dry Cleaning, Inc., to Philco Finance Corporation. The monthly installment payments which became due on April 1, 1964, and thereafter, have not been paid. Of the total time balance of $17,468.75, there is an unpaid balance on the contract in the sum of $8,005.53.

*Contract dated February 9, 1962:*

On or about February 9, 1962, Dean J. Storer and Elaine B. Storer, husband and wife, and Lloyd Petersen and JoAnn Petersen, husband and wife, entered into a conditional sale contract with Day-Nite Coin-Op Dry Cleaning, Inc., for the sale by the latter and the purchase by the former of certain dry cleaning equipment. This contract provided for a cash price of $23,750.95 and a down payment of $2,247.50, leaving an unpaid balance of the cash price of $21,503.45. A finance charge of $5,160.55 was added to the balance of the cash price, making a total time balance of $26,664.00. The contract provided for payment of 48 consecutive monthly installments of $550.50 each, beginning on February 18, 1962. By written assignment on the contract dated February 9, 1962, the contract was assigned by Day-Nite Coin-Op Dry Cleaning, Inc., to Philco Finance Corporation. Commencing with the monthly installment payments due on February 18, 1962, the purchasers made 13 monthly installment payments of $550.50 each on the contract, including the monthly installment payments which became due from February 18, 1962 through February 18, 1963. The total amount of the monthly installment payments made prior to the execution of the extension agreement, was $7,221.50, reducing the contract balance to $19,442.50.

On or about August 1, 1963, Philco Finance Corporation and these purchasers entered into an extension agreement modifying and extending the terms of payment provided in the Storer-Petersen contract. At the time the extension agreement was entered into, the unpaid balance on the contract was $19,442.50. Under the terms of the extension agreement, the term of payment was extended by 25 months to a total remaining term of 58 months. Interest in the total amount of $2,430.31 was added to the unpaid balance, making a total balance of $21,872.81, to be paid in 58 consecutive monthly installments. The extension agreement provided for the monthly installment payments to be made beginning August 18, 1963, and continuing each month thereafter in accordance with a schedule of payments agreed upon by the parties.

The monthly installment payments which became due on March 18, 1964, and thereafter, have not been paid. The total monthly installment payments made pursuant to the extension agreement prior to March 18, was $2,760.55. Of the total balance of $21,872.81, as modified by the extension agreement, there is an unpaid balance on the contract in the amount of $19,112.26. However after applying the payments made subsequent to the extension agreement to the balance remaining due upon the contract obligation of the purchasers at the time of the extension agreement, the balance due upon the sale contract is in the amount of $16,681.95.

All the purchasers contended (1) that the finance charge included in the conditional sale contracts amounted to a "taking, receiving, reserving or charging" of a usurious rate of interest in contravention of I.C. §§ 27–1905 and 27–1907, or (2) that the contracts were devices to circumvent the usury law, and sought application of the forfeiture and penalty provisions of the usury statute to offset that amount in default on each contract. Additionally, the purchasers under the Storer-Petersen contract, sought an adjudication that the extension agreement of August 1, 1963 was usurious. The sellers (Day-Nite Coin-Op Dry Cleaning, Inc.) and Philco Finance Corporation, as holder of the sale contracts, sought personal judgment against the purchasers for the amount in default on each contract.

The consolidated cases were submitted to the court on the motions of the respondents (sellers) and the cross-motion of the appellants (purchasers) for judgment on the pleadings. The trial court made findings of fact, conclusions of law and entered judgment. Appellants have appealed from that part of the judgment holding that the two contracts are not usurious. Respondent, Philco Finance Corporation, has cross-appealed from that part of the judgment

holding the extension agreement usurious, and the trial court's computation of the offset for usurious interest charged.

Appellants by their assignments of error raise four issues, summarized as follows: (1) Is the finance charge in the conditional sale contract interest within the scope and purview of the Idaho usury statute? (2) Are the conditional sale contracts involved merely devices to circumvent the usury law? (3) Are the sellers under a conditional sale contract required to pursue their security, i. e., the property sold, before obtaining a personal judgment against the purchasers for the amount owed on the contract? (4) Are the attorney's fees allowed by the court in this case excessive?

The central issue is whether the amount exacted as a finance charge in both conditional sale contracts is interest within the scope and purview of the Idaho usury statute, I.C. § 27–1907. That section proscribes the "taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter." I.C. § 27–1905 limits the "rate of interest, on money due or to become due on any contract" to eight percent (8%) per annum.

■■■ The Idaho cases have consistently recognized the distinction between a loan of money and a time sale of property, and have held the latter are exempt from the state usury law. The rationale of those decisions has been that a seller may offer to sell at a designated price for cash or at a higher price for credit. Sale at a credit price will not constitute usury, although the difference between cash and credit price exceeds the lawful rate of interest that may be charged on a cash basis, so long as the transaction is not merely a form or device for defeating the usury laws. Consequently, the bona fide sale of property under a contract providing for the payment of the purchase price, in whole or in part, in the future, in one or more installments, is in no sense a loan; and the usury statute has no application to such sales. Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412 P.2d 586; Freedman v. Hender-

shott, 77 Idaho 213, 290 P.2d 738; Bell v. Idaho Finance Co., 73 Idaho 560, 255 P.2d 715; Milo Theater Corp. v. National Theater Supply, 71 Idaho 435, 233 P.2d 425. See generally, Anno. 143 A.L.R. 238.

Bell v. Idaho Finance Co., supra, involved a suit filed by the purchaser of an automobile under a conditional sale contract against the finance company assignee of the contract on the ground the contract was usurious. The case came before the supreme court after the district court sustained a general demurrer to the complaint for failure to state a cause of action and dismissed the case.

The conditional sale contract, prepared in the office of the finance company on a form furnished by the company, provided that the purchaser pay a down payment of $1000 on signing the contract, seventeen monthly installments of $95 each and a final payment of $920.50. There was no provision in the contract for the payment of interest except "after maturity at the highest rate permitted by law."

The specifications of the complaint alleged that the amount financed under the contract was the sum of $2,000, which represented the balance owed on the claimed agreed purchase price for the automobile; that the payments as arranged in the contract, however, aggregated the sum of $2,535.00; and that included in this amount was interest in the sum of $341.00, which represented an interest greater than the eight percent (8%) allowed under Idaho law.

This court, upholding the dismissal of the purchaser's action, ruled the allegation of the complaint that the amount financed was the sum of $2000 represented merely the unsupported and uncorroborated conclusion of the pleader. Moreover, the complaint failed to allege, or supply supporting facts, that the dealer from which the car was purchased was engaged in the business of lending money; nor, additionally, did the complaint show that the interest of the finance company was that of

the lender of money rather than simply the purchaser of paper.

The opinion noted the complaint did not disclose the finance company had anything to do with the transaction until after the buyer and seller had agreed upon the terms of the sale; the action of the finance company as disclosed by the complaint was limited to preparing the contract setting forth the agreement the parties had reached and later purchasing the contract, and there was no contention that it added anything or failed to detail that agreement.

The court concluded the sale of property on contract when validly undertaken is in no sense a loan and the usury statute has no application to such sales; consequently, the sale of the automobile under this conditional sale contract was in no sense a loan, and the usury statute had no application to that sale.

■ The decision in Bell v. Idaho Finance Co. controls the disposition of the case at bar. There is no record that respondent, Day-Nite Coin-Op Dry Cleaning, Inc. was in the business of lending money nor is there any record that respondent assignee, Philco Finance Corporation, had any interest other than the purchaser of paper. The record, as in the *Bell* case, does not show that the respondent finance company had anything to do with the transactions until *after* the seller and purchasers had agreed upon the terms of the respective contracts. Appellants, moreover, make no contention that prior to the time the parties reached their agreement, the finance company was solicited to make, or that it agreed to make, a loan to the appellants or that it at any time did in fact make any loan to them. Compare, Jackson v. Commercial Credit Corp., 90 Ga.App. 352, 83 S.E.2d 76 (1954).

The cases involved in this appeal were submitted on stipulated facts. There is no other evidence in the record. There is no evidence relating to any conversations, communications or other dealings between the parties. There is nothing to indicate that the credit price was not bona fide nor

that it was not the agreed purchase price for the dry cleaning equipment sold. Consequently, the ruling of this court in the case of Bell v. Idaho Finance is controlling.

However, appellants maintain the *Bell* case may be distinguished from the case at bar on the premise that the plaintiff therein failed to state a cause of action because he could not show the parties discussed a cash price to which had been added a finance charge for deferred payment. They contend that in the instant case there is recited on the face of the contract the cash price and the time price differential, from which it may readily be computed the time balance was financed at an usurious rate of interest.

■ Subsequent to the decision in Bell v. Idaho Finance Co., supra, I.C. § 64–806, Session Laws 1957, ch. 153, the "Truth in Financing" act was passed, mandatorily requiring that conditional sale contracts list the cash price, the charges in addition thereto, the time price and the time price differential. The conditional sale contracts herein involved conformed to those statutory requirements. No valid inference, as appellants would have us reason, can be drawn by this enactment that the state legislature thereby intended the usury law would be thereafter made applicable to a bona fide conditional sale contract. The contrary conclusion is the more tenable since the legislature did not so specifically provide, when it might very easily have done so had that been its purpose. The object of the enactment is simply that which it purports to be on its face, namely, truth in financing to enable a purchaser to discern the amount paid for the privilege of buying on credit.

■■ The fact that the seller must now insert a cash price in the conditional sale contract does not transform the transaction from a credit to a cash purchase, which is, in effect, the conclusion appellants urge by their attempt to distinguish the *Bell* case. Their contention in this regard is erroneous in that it inaccurately equates the cash price recited therein with an agreed pur-

chase price for which financing is obtained. The law is clear. Where the *intention* is in fact to sell on credit, the seller has the right to fix a price greater than the cash price, with legal interest added. But if the sale is really made on a cash estimate, and time to pay the cash price is given, and an amount greater than the cash price plus legal interest is charged, the transaction, though cast in the form of a conditional sale contract, is an agreement for the loan of money that is usurious. See for example, Cunningham v. Chamblin, 227 Ark. 389, 299 S.W.2d 89 (1957). Cf. Morgan Motor & Finance Co. v. Oliver, 101 Utah 492, 124 P.2d 778 (1942). The purchaser in the *Bell* case failed to state a cause of action because there was nothing in the complaint to indicate a cash rather than a credit sale was involved, and not because, as appellants contend, the contract in that cash stated a lump sum purchase price from which the time price differential could not be ascertained.

The majority rule in the United States exempts a bona fide conditional sale contract from the usury statutes.

"It is well settled that where the contract of conditional sale is bona fide and the finance charge or other similar charge is included therein as a part of the total 'time' or credit price of the chattel which the purchaser thereby agrees to pay upon a deferred payment basis, the finance charge does not constitute usury, even though such charge, if considered as interest, would be in excess of the highest lawful interest upon the cash purchase price for the time payment thereof is deferred under the contract, provided of course that the transaction was what it purported to be and not in fact a loan." Anno. 143 A.L.R. 238, at p. 242.

See also 55 Am.Jur., Usury, § 23, pp. 340–341; Steffenauer v. Mytelka & Rose, Inc., 87 N.J.Super. 506, 210 A.2d 88 (Super.Ct.) aff'd 46 N.J. 299, 216 A.2d 585 (1966) (applying the majority rule to facts almost identical to those at bar).

Persuasive arguments have been made that existing legal concepts in this area should be reexamined, and that the law should be changed to make the usury statutes applicable to conditional sale contracts. Legal writers generally point out the "time-price doctrine" appeared before the advent of large scale credit buying, and find it difficult to justify the differentiation between the consumer being granted the protection of the usury law when making a loan to facilitate a purchase, and being denied the protection when making the same purchase on credit granted by the seller. See Warren, Regulation of Finance Charges in Retail Installment Sales, 68 Yale L.J. 839 (1959), for an exhaustive discussion on the need for comprehensive regulation of finance charges. Courts, on the other hand, have generally recognized that a conditional sale of chattels on a deferred a payment basis involves various expenses and risks of loss not present in a cash transaction, and have continued to rule that statutes with respect to usury have no application to the conditional sale contract—unless, of course, it appears the transaction is really a disguised loan designed to circumvent the usury law. See generally, Anno. 143 A.L.R. 238; 55 Am. Jur., Usury, § 23, pp. 340–341. But see Lloyd v. Gutgsell, 175 Neb. 775, 124 N.W.2d 198 (1963) (concurring opinion of Justice Brower); Sloan v. Sears, Roebuck and Co., 228 Ark. 464, 308 S.W.2d 802, at p. 806 (1957).

Historically, the usury statute was intended to deal with those problems attendant with the loan of money or the forbearance of debt. Thus, in Idaho, it cannot be said our statute was enacted to protect the purchaser under the conditional sale contract. While appellants, commendably, have presented forceful arguments urging that this court reexamine the law and apply our usury statute to the finance charge in the conditional sale contract, this question is more properly that for the legislature, and, consequently, based upon our prior decision in Bell v. Idaho Finance Co.,

supra, and the nearly uniform rule throughout the United States, we concur in the conclusion of the district court that our usury statute has no application to the finance charge or other similar charge in the bona fide conditional sale contracts.[1]

There is nothing in the record to condemn either transaction as a subterfuge to conceal an usurious loan, and appellants' contention that the contracts were devices to circumvent the usury law is without merit. This was a sale of property under circumstances identical to those found in Bell v. Idaho Finance Co., supra. The facts to which the parties stipulated afford no evidence that the cash price set forth in each conditional sale contract was an agreed purchase price, without regard to whether the sale was for cash or on credit, for which financing was obviously obtained, nor that respondent, Philco Finance Corporation, had anything to do with either transaction until after the parties had agreed upon the terms of the respective contracts. The ruling of the Bell case would permit a seller to consider the "amount of discount" in fixing the credit price for a chattel, although that this was done is only inferentially suggested by the facts presently before this court. See Steffenauer v. Mytelka & Rose, Inc., supra; Jackson v. Commercial Credit Corp., supra.

The decision of the trial court that neither conditional sale contract was usurious is affirmed.

■■■ Appellants rely upon I.C. § 6-101 to support their contention that respondent, Philco Finance Corporation, must first have pursued the property sold before being entitled to a personal judgment against the respective appellants for the balance due on the conditional sale contract. A more applicable statutory provision, however, is I.C. § 64–501(1), from which it may be concluded that the vendor in a conditional sale contract may bring an action either for the balance due or for the security, i. e., the equipment sold. 3 Williston, Sales, § 560(b), pp. 197–199; § 571, pp. 211–212 (Rev.Ed.1948). This is the general rule. Bollinger v. Jarrett, 146 Mont. 355, 406 P.2d 834 (1965); Yost v. May, 110 Cal.App.2d 41, 242 P.2d 73 (1952); Geroy v. Upper, 182 Or. 535, 187 P.2d 662, 174 A.L.R. 1355 (1947); Miller v. Whitaker, 224 Or. 205, 355 P.2d 768 (1960) (applying Washington law); Soter v. Snyder, 3 Utah 2d 28, 277 P.2d 966 (1954). Consequently, the district court committed no error in entering personal judgment against appellants.

■■■ The district court awarded attorney's fees in accord with the agreement in each conditional sale contract providing for the payment of fifteen percent (15%) of the unpaid balance in the event of default. The appellants produced no persuasive evidence to substantiate their claim that this award was unreasonable; and their assignment of error in this respect, we find without merit.

Respondent, Philco Finance Corporation, cross-appealed from that part of the judgment which ruled the extension agreement usurious. Two issues are presented by assignment of error on the cross-appeal. First, while respondent concedes the extension agreement comes within the scope of the state usury law, the assertion is made the court erroneously concluded the interest charged thereunder was usurious. Secondly, the respondent alleges, even if the court were correct in that conclusion, the penalty assessed against respondent was excessive and contrary to the penalty provisions of I.C. § 27–1907.

---

1. See for example, Steffenauer v. Mytelka & Rose, Inc., supra, relative to that legislation passed in New Jersey attempting to resolve those problems created by retail sales where the seller charges an amount in excess of the cash price of goods for the privilege of purchasing the goods on an installment basis. Some of the problems associated with a credit sale have been alleviated in Idaho by the aforementioned "Truth in Financing" act, I.C. § 64–806.

In the Storer-Petersen contract to which the extension agreement is a part, the parties originally contracted for a deferred payment period extending over 48 months. Thirteen months had elapsed, and while the contract was admittedly in default, and by its terms due and payable, respondent, as holder of the contract, agreed to forbear collecting the amount due for an additional 25 months of time. The sum of $7,221.50 had been paid under the contract which left an unpaid balance of $19,442.50 at the time of the extension agreement on August 1, 1963. The amount charged for the time extension was $2,430.31, which added to the unpaid balance of $19,442.50, made a total balance of $21,872.81, payable thereafter in 58 consecutive monthly installments. The sum of $2,430.31 was *add-on* interest, computed at six percent (6%) per annum on the unpaid balance.

This interest figure would net respondent an annual simple interest rate in excess of that permitted by I.C. § 27-1905, if the forbearance extended for 25 months, but not if it extended for 58 months. The question, consequently, dispositive of the issue of whether the extension agreement was usurious, is whether by virtue of the extension agreement, the forbearance allowed by the holder of the contract for a period of 25 months, was actually for an additional 25 months, or for a 58-month total period. The district court concluded the appellants, Lloyd and JoAnn Petersen, and Dean J. and Elaine B. Storer, obtained a forbearance from the holder of the conditional sale contract or respondent for a period of 25 months only.

■ Under the terms of the original contract, each unpaid installment would have drawn interest at the highest legal rate. However, the district court determined that respondent in effect waived this remedy in choosing not to cancel the original contract and declare the entire balance immediately due and payable by reason of the default. Under this interpretation, the extension agreement was a modification of the original contract and provided for the

forbearance of the amount due under the contract for 25 months. Respondent contends this is an unfair interpretation for the very reason that it could have declared the unpaid balance immediately due and payable; and, presumably, then have turned around and loaned to appellants the sum of $19,442.50 to pay off the contract balance, legally drawing even a higher rate of interest for the term of 58 months than was in fact charged. That reasoning is fallacious; and appellants, having defaulted on the contract, had become the necessitous debtor, for whose protection the usury statute was enacted. Bell v. Idaho Finance Co., 73 Idaho at 564, 255 P.2d at 718. The extension agreement was properly ruled usurious.

The district court granted appellants an offset equal to the interest charged plus two times that amount against an outstanding balance from which it had already deducted the amount of interest. Thus an offset and credit in the amount of $7,290.93 (amount of interest plus twice that amount) was awarded appellants against the sum of $16,681.95, which the court determined was the balance owed on the conditional sale contract agreement of February 9, 1962, as modified by the extension agreement ($19,442.50, principal amount of extension agreement minus $2,760.55, installment payments made on extension agreement), plus the sum of $2,502.29 (attorney's fees, 15% of $16,681.92), or $19,184.24; and personal judgment was entered against appellants in the amount of $11,893.31 ($19,184.24 minus $7,290.93) in favor of respondent.

■ This, respondent asserts, was contrary to the penalty provisions of § 27-1907, in that the net result of such computation was to assess respondent a total penalty equal to four times the usurious interest charged. We agree. This method of computation was erroneous in view of the specific language of the penalty provision:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter, when knowingly done, shall be deemed a *forfeiture* by the

person so taking, receiving, reserving or charging to the benefit of the person paying or being charged, *of the entire interest which the contract carries with it or which has been agreed to be paid thereon, plus twice the amount of such interest.*" (Emphasis supplied.)

Having already ruled a forfeiture of the amount of the usurious interest provided in the contract, the district court should properly have subtracted from that recomputed outstanding balance only two times the usurious interest charged, or $4,860.62, in computing the offset to which appellants were entitled on the contract. Freedman v. Hendershott, 77 Idaho 213, 290 P.2d 738.

The district court relied on the case of Cheney v. Overmyer, 64 Idaho 213, 129 P.2d 978, in computing the penalty assessed against respondent. That case, insofar as inconsistent with the result expressed herein, is specifically overruled.

 The district court correctly subtracted the usurious interest charged from the unpaid balance on the contract before computing attorney's fees based on the contract agreement of the parties providing for attorney's fees equal to fifteen percent (15%) of the unpaid balance in case of default. Attorney's fees will not be allowed for attempts to collect usurious interest. Consequently, the award of $2,502.29 attorney's fees (15% of $16,681.95) to respondent on the February 9, 1962 contract was not error. 91 C.J.S. Usury, § 59a, p. 641. Wilson v. Conner, 106 Fla. 6, 142 So. 606 (1932).

The judgment in favor of respondent, Philco Finance Corporation, against appellants, Ronald L. Bird and Flora May Bird, in the amount of $8,005.53 as the contract balance due, together with attorney's fees in the amount of $1,200.75, for a total of $9,206.28, is affirmed.

The judgment in favor of respondent, Philco Finance Corporation, against appellants, Dean J. Storer and Elaine B. Storer and Lloyd Petersen and JoAnn Petersen, is modified and increased, to the amount of $16,681.95 as the contract balance due, together with attorney's fees in the amount of $2,502.29, for a total of $19,184.24, less the offset of $4,860.62, for a total of $14,323.62.

The judgment as modified is affirmed. Costs to respondent.

TAYLOR, C. J., SMITH and McQUADE, JJ., and ANDERSON, D. J., concur.