Ray W. STODDARD and Thelma
Stoddard, Plaintiffs-Appellees,

v.

Frank STODDARD, Defendant-Appellant.

No. 79–4177.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1980.

Decided April 9, 1981.

William L. McGimsey, Las Vegas, Nev.,
for defendant-appellant.

Lowell N. Hawkes, Pocatello, Idaho, for plaintiffs-appellees.

Before CHOY, J. BLAINE ANDERSON and SCHROEDER, Circuit Judges.

CHOY, Circuit Judge:

Frank Stoddard appeals from a summary judgment in favor of Ray and Thelma Stoddard in an action for collection on a note. We affirm the judgment.

I. *Facts*

Appellees Ray and Thelma Stoddard are husband and wife. Ray Stoddard (Ray) and appellant Frank Stoddard (Frank) are brothers. This suit is based on a note signed by Frank on April 15, 1975. It was signed to consummate a settlement between the brothers resolving a dispute which had arisen out of an alleged land exchange contract made in 1969.

In early 1969, Frank became interested in purchasing a cattle ranch in Oklahoma. Frank wanted Ray to sell Ray's ranch in Idaho and lend the proceeds to Frank to enable him to buy the new ranch. Frank contends that Ray agreed to sell the ranch and lend the proceeds to him at 8% interest. Ray denies the existence of such an agreement. Frank contends that in reliance on this alleged oral loan agreement he went ahead and purchased the Oklahoma ranch.

In July 1969, Ray determined on advice of his accountant that a tax-free exchange of ranch property would be the best way to provide Frank with the needed funds for the Oklahoma venture without creating any tax liability for Ray. The contract provided that Ray would exchange his ranch for an undivided interest in Frank's two Idaho ranches and home. Frank notes that his equity in these two ranches was part of the consideration for the purchase contract on the Oklahoma ranch. He maintains that

Ray was aware of this before the July agreement was made.

The 1969 agreement provided that: (1) Frank would pay Ray $3,000 per year for five years (Ray states that this amount represented annual rental payments for Frank's use of the property that now belonged partially to Ray and was equal to the annual rental that Ray had been receiving from a third person on the property exchange); and (2) at the end of five years Ray had the option to either keep his undivided interest or sell it to Frank at its appreciated value of "approximately $100,-000."

There is a dispute as to what Ray's ranch was worth at the time of the exchange. Ray contends that Frank told him he could sell it for $65,000 but it was eventually sold for only $60,000. In December 1969, Frank deeded an undivided three-fourths interest in his two ranches to Ray.

The amount of payments made by Frank to Ray is another point of dispute. By April 1975, Frank claims to have made payments totaling almost $56,000 while Ray put the figure at about $42,000.

In April 1975, to settle the dispute between the parties, Frank signed a promissory note in the sum of $60,000 at 8% interest, providing for $10,000 per year payments over the next five years with a balloon payment at the end, all with the purpose of paying off Frank's obligation to Ray under the 1969 agreement. Frank paid Ray $8,500 towards the first annual $10,000 payment and then defaulted. Ray then brought this action to collect on the 1975 note.[1] Frank counterclaimed asserting that the 1975 note was an extension of a usurious loan transaction initiated in 1969 and asked for the statutory penalties for usury under Idaho law. Both parties filed motions for summary judgment.

The district court issued a memorandum decision granting Ray's motion for summary judgment and denying Frank's motion.

---

1. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. Idaho law controls the disposition of this dispute.

## II. *Issues*

1. Was the 1969 agreement a valid exchange and repurchase agreement or was it a disguised loan providing for usurious interest?
2. Was the 1975 agreement an enforceable compromise and settlement of the 1969 agreement?
3. Was summary judgment appropriate?

## III. *The 1969 Agreement*

Ray contends that the 1969 agreement was a valid land exchange with an option to repurchase. Frank maintains that it was a disguised loan agreement providing for usurious interest.

Frank argues that the 1969 agreement effected a loan by Ray to Frank of $60,000, the sale price of Ray's ranch. Frank was required to pay $3,000 per year for five years and $100,000 at the end of the five years. Frank maintains that a mandatory repurchase provision such as that found in the 1969 agreement converts a purported sale and repurchase transaction into a loan. He considers it mandatory because it was solely at Ray's option. If considered a loan, this results in an annual interest rate far in excess of the 10% maximum set by Idaho law. Idaho Code § 28–22–105.[2]

■ The loan versus exchange-with-repurchase option disagreement is an important issue because under Idaho law, usury statutes have no application to bona fide sale transactions. *Buchanan v. Dairy Cows,* 97 Idaho 481, 482, 547 P.2d 526, 527 (1976). In general the Idaho courts have held that this question of whether an agreement is a sale or a loan is a question of fact based upon the particular circumstances of each case.

In *Freedman v. Hendershott,* 77 Idaho 213, 290 P.2d 738 (1955), the Idaho Supreme Court noted that:

The question whether for the purpose of the usury law a transaction in the form of a sale of property with an option or agreement to repurchase at an advanced price payable in the future is what it purports to be or a loan has been held to depend upon the intention of the parties.

*Id.,* 97 Idaho at 218, 290 P.2d 738, *quoting* 154 A.L.R. 1063. In *Freedman,* the court found that a sale accompanied by a resale two days later at a premium constituted a usurious loan.

■ The Idaho courts have held, however, that the burden is on the party alleging usury to show that an instrument, valid on its face, is a disguised loan. This burden requires clear and convincing evidence. *Buchanan v. Dairy Cows, supra,* at 482, 547 P.2d 526; *Meridian Bowling Lanes, Inc. v. Brown,* 90 Idaho 403, 414, 412 P.2d 586, 592 (1966); *Bethke v. Idaho Savings and Loan Association,* 93 Idaho 410, 414, 462 P.2d 503, 507 (1960).

■ These cases place great importance on whether the person involved was a necessitous debtor. The Idaho court has stated that usury laws have as their purpose the protection of "the necessitous debtor against extortion which he is practically helpless to resist." *Bethke v. Idaho Savings and Loan Association, supra,* at 414, 462 P.2d 503, *quoting Freedman v. Hendershott,* 77 Idaho 213, 219, 290 P.2d 738, 741 (1955).

The 1969 contract is very similar to the one at issue in *Meridian Bowling Lanes, Inc. v. Brown, supra,* at 412–13, 412 P.2d 586, in which the Idaho Supreme Court stated:

Here we have parties of equal bargaining power. . . . Thus on both sides we have parties who were intelligent, successful business men of long experience, who were highly competent to deal, and dealt at arms' length. There are no professional lenders of money involved, nor do we

2. Idaho Code § 28–22–105, (amended 1969) (current version amended 1979), provided in relevant part:

28–22–105. Maximum rate of interest—Parties may agree in writing for the payment of

any rate of interest, on money due or to become due on any contract, not to exceed the sum of ten per cent (10%) per annum . . . .

have a necessitous debtor who was practically helpless against the usurious demands of a money lender. At the time of the transaction there was no debt owed by appellant to respondents or even to a third party. If the transaction had not been consummated, appellant stood in no position of suffering appreciable loss except the anticipated profits from a speculative business venture....

... Such a transaction entered into by parties of equal bargaining power who have dealt with each other at arms' length in the negotiations for such transaction and who knowingly intend to make a sale-purchase agreement instead of a loan, shall be construed as the parties intended, i. e., a land sale agreement. (Citations omitted.)

This case emphasizes the basic point that usury laws are not meant to be applied in cases such as this where Frank was a businessman who apparently wanted the money to make a large profit on the Oklahoma ranch. Frank is not the kind of "necessitous debtor" the court refers to.[3] The court stated:

The usury laws have aptly been called blunt instruments of social control. They have but a single purpose. That is to protect "the necessitous debtor against extortion which he is practically helpless to resist." We have repeatedly, and recently, held that the usury laws were not designed to permit a debtor to default on a contract which was not clearly oppressive, which was not clearly within the prohibition of the usury law, and into which he had entered knowingly, freely, and with arms length bargaining. The twin goal of protecting the helpless debtor while avoiding unnecessary disruption of commercial transactions may be succinctly summed up in the aphorism that usury laws are meant to be shields and not swords. (Footnotes omitted.)

*Bethke v. Idaho Savings and Loan Association, supra,* at 414, 462 P.2d 503.

**3.** Although Frank contends that Ray was his last resort after exhausting all other avenues to get needed capital for the venture, he admitted in his deposition that after one Pocatello bank

On the facts and circumstances of this case, we interpret the 1969 agreement as it was drafted—as a land exchange agreement with an option to repurchase. Usury is not applicable to such agreements.

The remaining issue as to the 1969 agreement concerns the appropriateness of the granting of the summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the record before the court shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Heiniger v. City of Phoenix,* 625 F.2d 842, 843 (9th Cir. 1980); *Garter-Bare Co. v. Munsingwear, Inc.,* 622 F.2d 416, 422 (9th Cir. 1980).

There were no genuine issues relating to the material facts that Frank was not a "necessitous debtor" and that this was in arms' length transaction between two businessmen. Summary judgment was appropriate.

### IV. *The 1975 Agreement*

A compromise and settlement is a subcategory of accord and satisfaction and is an agreement between two parties to terminate a disputed good-faith claim by means of mutual concessions. We find that the 1975 contract constitutes a binding and enforceable compromise and settlement.

Frank agreed to the new contract in order to avert a lawsuit by Ray on the 1969 contract. Ray apparently also lowered the amount he claimed Frank owed to him. Idaho law provides that where one party makes a good-faith claim and the other party compromises that claim in order to avoid a lawsuit, there is sufficient consideration regardless of whether the lawsuit would have been successful. *Wilson v. Bogert,* 81 Idaho 535, 543, 347 P.2d 341, 345–46 (1959).

rejected his loan application, he did not even contact any other person, bank or institution for funds to pursue the Oklahoma venture.

Frank contends that the 1975 agreement is unenforceable because it did not purge the taint of usury from the original transaction. This argument is precluded by our finding that the 1969 contract was not a usurious loan.

█ Frank also contends that the 1975 agreement is invalid because it was obtained by duress and that the district court erred in granting summary judgment because duress is a question of fact. Ray counters that Frank's claims are insufficient to constitute duress as a matter of law.

In *Newland v. Child*, 73 Idaho 530, 541, 254 P.2d 1066, 1072 (1953), the Idaho Supreme Court stated that:

> To be voidable because of duress, an agreement must not only be obtained by means of the pressure brought to bear, but the agreement itself must be unjust, unconscionable, or illegal. The essence of duress is the surrender to unlawful or unconscionable demands. It cannot be predicated upon demands which are lawful, or the threat to do that which the demanding party has a legal right to do. (Citations omitted.)

Frank claims duress from the facts that Ray threatened to sue on the 1969 agreement, that Ray came to Frank's home in Idaho and refused to leave until Frank signed some kind of a new agreement, and that Ray represented to Frank that the 1975 note was for the benefit of Ray's creditors and would not be used as a valid legal instrument. These grounds are legally insufficient to constitute duress. As there were no genuine issues of material fact, the summary judgment was appropriate. Rule 56(c), Federal Rules of Civil Procedure.

### V. Conclusion

The 1969 sale and repurchase agreement is not subject to the Idaho usury statute. The 1975 contract constitutes a binding and enforceable compromise and settlement of the 1969 agreement. There are no genuine issues of material fact; therefore the granting of summary judgment was appropriate. The judgment of the district court is AFFIRMED.

J. BLAINE ANDERSON, Circuit Judge, dissenting and concurring:

I respectfully disagree with my colleagues and the district court in finding and concluding that the circumstances surrounding the 1969 agreement were such as to permit summary judgment on the usury issues. In my view, there were genuine and material issues of fact, all of which are bound up with issues of credibility and the weight to be accorded the sharply conflicting evidence presented by the parties. However, in my view, it is not necessary to elaborate on those issues and I would not reach them.

The compromise and settlement culminating in the execution and delivery of the 1975 promissory note, under applicable Idaho case law, wiped the slate clean as between the parties. Summary judgment on this issue was proper. Frank's argument that the settlement note of 1975 is still tainted with usury is simply untenable. I concur in the conclusion reached in Part V of Judge Choy's opinion on the binding and enforceable effect of the compromise and settlement agreement, on the duress defense, and the conclusion to affirm the district court.