**Steven H. SEYMOUR, Sr., Elizabeth Seymour, and Steven H. Seymour, Sr., as Administrator of the Estate of Steven H. Seymour, Jr., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. CV189-160.

United States District Court, S.D. Georgia, Augusta Division.

June 18, 1990.

**1162**

James B. Wall, Jay M. Sawilowsky, Augusta, Ga., for plaintiffs.

Edmund A. Booth, Jr., First Asst. U.S. Atty., Augusta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

Plaintiffs, parents of decedent and administrator of decedent's estate, bring this action in admiralty to recover damages resulting from decedent's death. On August 22, 1987, decedent, Steven H. Seymour, Jr., dove off his parent's house boat and was swimming in Strom Thurmond Lake near a dock operated by the Tradewinds Marina & Yacht Club, Inc. (Marina) when he sustained an electrical shock which led to his drowning and death. Plaintiffs allege that defendant was responsible for the safety of users of the Marina and lake pursuant to a lease agreement of the Corps of Engineers with the Tradewinds Marina & Yacht Club, Inc., as amended by supplemental agreements and pursuant to assignments to the Marina. Plaintiffs further contend that the decedent's death was caused by the defendant's failure to inspect the electrical system of the Marina and take various preventative measures. The government defendant has filed a motion to dismiss plaintiffs' complaint, due to lack of subject matter jurisdiction, which is currently before the Court. See Fed.R.Civ.P. 12(b)(1). Defendant also moves the Court to dismiss the plaintiffs' complaint for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A district court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). I will apply these standards in ruling on defendant's motion to dismiss.

Article III, Section 2, of the United States Constitution extends the federal judicial power "to all Cases of admiralty and maritime Jurisdiction." Congress effectuated this jurisdictional grant through 28 U.S.C. § 1333(1). "Because exercise of admiralty jurisdiction and invocation of substantive maritime law may tend to preempt state regulation of matters traditionally within the ambit of local control, the courts have preferred to read congressional grants of admiralty jurisdiction restrictively." *Harville v. Johns–Manville Products Corp.*, 731 F.2d 775, 780 (11th Cir.1984). Prior to the United States Supreme Court decision in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), most federal courts applied a strict "location-only" test in determining whether a tort claim was subject to the maritime jurisdiction of the United States.[1] In *Executive Jet Aviation*, a jet aircraft had struck a flock of sea gulls upon takeoff from Cleveland airport. As a

---

1. Under the "location-only" test, the determinative factor was whether the " 'wrong and injury complained of [was] committed wholly upon the high seas or navigable waters, or, at least, the substance and consummation of the same

[took] place upon these waters.' " *Harville v. Johns–Manville Products Corp.*, 731 F.2d at 780 (citing *The Plymouth*, 70 U.S. 20, 35, 18 L.Ed. 125 (1886)).

result, the plane lost power and crashed into the navigable waters of Lake Erie. Invoking federal admiralty jurisdiction, the aircraft owners sued for damages in federal court. The Supreme Court refused to apply the "location-only" test in an aviation context. The Supreme Court supplemented the location test by the addition of a nexus test. Subsequently, the nexus requirement was extended to cover cases beyond those dealing with aviation torts. *See Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Therefore, federal court jurisdiction in an admiralty case requires a showing, in addition to satisfaction of the locality rule, "that the wrong bear a significant relationship to traditional maritime activity." *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. at 268, 93 S.Ct. at 504.

In the instant case, defendant contends that the Court lacks subject matter jurisdiction because the incident giving rise to this case did not occur on navigable waters. As discussed above, for a plaintiff to invoke the court's admiralty jurisdiction the alleged wrongful injury must have occurred on navigable waters. "... [N]avigable waters of the United States are those waters capable, in fact, of navigation in interstate travel or commerce, and distinctions between natural and man-made bodies of water are immaterial." *Sanders v. Placid Oil Co.*, 861 F.2d 1374, 1377 (5th Cir.1988).

In the instant case, defendant contends that Strom Thurmond Lake does not constitute navigable waters because it is not presently being used for interstate or foreign commercial purposes. Plaintiffs, on the other hand, argue that Strom Thurmond Lake satisfies the definition of "navigable waters" due to the fact that it is an interstate body of water capable of interstate commerce. Case law reveals a split among circuit court of appeals over what constitutes "navigable waters" for purposes of admiralty jurisdiction.

The Sixth Circuit in *Finneseth v. Carter*, 712 F.2d 1041, 1047 (6th Cir.1983), stated that where a lake is "... an interstate water body susceptible or capable of being used as an interstate highway of commerce, even though it is not presently so used, it meets the Supreme Court's requirements for navigability for admiralty jurisdiction."

The concern of the *Foremost Insurance* Court [457 U.S. at 674–75, 102 S.Ct. at 2658] with the potential, rather than actual, impact on maritime commerce by pleasure craft suggests that federal interests in protecting maritime commerce extend to creating a climate conducive to commercial maritime activity on water bodies which are not presently or currently being used as interstate highways of commerce but are susceptible to or capable of such use.

*Id.* at 1046.

Conversely, the Seventh, Eighth and Ninth circuits interpret the "navigable waters" language as requiring "contemporary navigability in fact". *See Chapman v. United States*, 575 F.2d 147 (7th Cir.1978); *Livingston v. United States*, 627 F.2d 165, 170 (8th Cir.1980); and *Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir.1975). "The concept of 'navigability' in admiralty is properly limited to describing a present capability of waters to sustain commercial shipping." *Livingston v. United States*, 627 F.2d at 170. These circuits recognize that "absent some present or potential commercial activity, there is no ascertainable federal interest that justifies frustrating the legitimate interests of the states in providing a forum and applying their law to regulate conduct within their borders." *Id.* at 170 (citing *Adams v. Montana Power Co.*, 528 F.2d at 439). Although the Eleventh Circuit has not spoken on this issue, I adopt the holdings of these circuits which require contemporary navigability in fact. I endorse the Eighth Circuit's realization that "[f]ederal admiralty jurisdiction had its genesis in the felt need to provide a uniform body of law governing navigation and commercial maritime activity. Admiralty law, as a consequence, is concerned almost exclusively with the special needs of the shipping industry." *Livingston v. United States*, 627 F.2d at 169 (citing *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249, 269–70, 93 S.Ct. 493, 504–05, 34 L.Ed.2d 454 (1972)).

During a hearing conducted on April 30, 1990, the Court heard oral arguments of both parties with respect to defendant's motion to dismiss. At the conclusion of said hearing, I requested the parties to submit additional evidence regarding the existence or nonexistence of commercial activity, as well as, the potential for commercial activity on Strom Thurmond Lake. In response to my request, defendant has submitted the affidavit of Thomas J. Lewis who is the Assistant Resource Manager at J. Strom Thurmond Lake. Mr. Lewis' affidavit states, in pertinent part, the following:

> The J. Strom Thurmond Project is a multi-purpose project designed to reduce floods on the Savannah River, generate power and increase depth for navigation in the Savannah River below Augusta, Georgia. In 1986, under the Water Resources Development Act (PL 99–662) Congress amended the purposes of the project to include recreational, fish and wildlife management.
>
> Since I have been Assistant Resource Manager, J. Strom Thurmond Lake has been devoted to public recreational purposes such as boating, fishing, camping, picnicking and swimming. There has been no ferry boat service on J. Strom Thurmond Lake. To the best of my knowledge, there has not been any commercial shipping or interstate commerce on the lake.
>
> The only commercial activity at J. Strom Thurmond Lake consists of commercial marinas each of which operates under a lease agreement and one private vendor who operates under license and uses a mobile vehicle to sell products such as drinks, ice cream, crackers, hot dogs, etc. in six parks.

(Lewis Affidavit, Paragraphs 2–4). Therefore, I conclude that Strom Thurmond lake does not constitute "navigable waters" as that term is used for invoking admiralty jurisdiction.[2] Since I have concluded that the "navigable waters" requirement has not been satisfied, there is no need to con-

sider whether the second prong of the admiralty jurisdiction test—namely, whether the alleged wrong bears a significant relationship to traditional maritime activity— has been met. Accordingly, defendant's motion to dismiss is GRANTED.

ORDER ENTERED.

---

**2.** Having made this determination, an additional hearing regarding the defendant's motion to dismiss would be a waste of the parties' and the Court's time. Thus, I have decided to proceed in resolving this matter.