[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15060
_____

D.C. Docket No. 1:07-cv-00159-WLS

AQUA LOG, INC., a Georgia corporation,

Plaintiff-Appellant,

versus

LOST AND ABANDONED PRE-CUT LOGS AND
RAFTS OF LOGS, lying on the bottom of a navigable
river within one (1) river mile of a point located at
31 degrees 10.177' North Latitude and 84 degrees
28.122' West Longitude,

Defendant-Appellee,

STATE OF GEORGIA,

Claimant-Appellee.

_____

No. 11-15076
_____

D.C. Docket No. 1:07-cv-00208-WLS

AQUA LOG, INC., a Georgia corporation,

Plaintiff-Appellant,

versus

LOST AND ABANDONED PRE-CUT LOGS AND
RAFTS OF LOGS, lying on the bottom of a navigable
river within one (1) river mile of a point located at
31 degrees 04.157 minutes north latitude and 84 degrees
30.746 minutes west longitude,

Defendant-Appellee,

STATE OF GEORGIA,

Claimant-Appellee.

_____

No. 11-15078
_____

D.C. Docket No. 1:07-cv-00160-WLS

AQUA LOG, INC., a Georgia corporation,

Plaintiff-Appellant,

versus

LOST AND ABANDONED PRE-CUT LOGS AND
RAFTS OF LOGS, lying on the bottom of a navigable
river within one (1) river mile of a point located at
30 degrees 50.536' North Latitude and 84 degrees
44.725' West Longitude,

2

                                                        Defendant-Appellee,

STATE OF GEORGIA,

                                                        Claimant-Appellee.

                    _____

                Appeals from the United States District Court
                      for the Middle District of Georgia
                    _____

                           (February 15, 2013)

Before TJOFLAT, COX Circuit Judges, and MOTZ,[*] District Judge.

COX, Circuit Judge:

        These cases present a question that is almost as old as the doctrine of

admiralty jurisdiction itself.  As Justice Daniel posed it in 1857, "[T]he inquiry is

naturally suggested, what are navigable waters?"  *Jackson v. The Steamboat*

*Magnolia*, 61 U.S. (20 How.) 296, 320 (1857) (Daniel, J., dissenting).  Today, we

answer that question as follows: a waterway is navigable for admiralty-jurisdiction

purposes if, in its present state, it is capable of supporting commercial activity.

---

[*] Honorable J. Frederick Motz, United States District Judge for the District of Maryland,
sitting by designation.

## I. FACTS & PROCEDURAL HISTORY

These consolidated appeals concern segments of two Georgia waterways—a two river-mile stretch of the Flint River and a one river-mile stretch of Spring Creek.  The Flint River segment is bounded by a bridge at State Highway 37 at Newton, Georgia at its northern end and Bainbridge, Georgia at its southern end.  The Flint River empties into Lake Seminole, which lies on the border between Georgia and Florida.  The Flint River south of Bainbridge is currently used in interstate commerce, but the two river-mile stretch at issue here is not currently used in interstate commerce. Spring Creek is a tributary of the Flint River. (References in this opinion to the Flint River and Spring Creek should be understood as only addressing the two river-mile stretch of the Flint River and the one river-mile stretch of Spring Creek at issue in these cases.)

Historically, commercial vessels used both the Flint River and Spring Creek for transportation.  The parties agree that the Flint River was used to transport commercial vessels and that Spring Creek was capable of transporting commercial vessels.  Although currently there is no commercial activity on these waterways, the parties agree that the Flint River and Spring Creek can, in their present states, transport commercial vessels loaded with freight in the regular course of trade for at least part of the year.

4

During the late nineteenth century and early twentieth century, loggers transported their commercially harvested logs by floating them down rivers. Inevitably, some of the logs sank to the bottom. Today, there is an increased demand for these sunken logs because they produce superior furniture, flooring, and musical instruments. Such submerged logs are at the heart of this appeal.

Aqua Log, a company that finds, removes, and sells submerged logs, has located a number of submerged logs that have been abandoned by their original owners at the bottom of the Flint River and Spring Creek. Aqua Log estimates that there are hundreds of submerged logs at the bottoms of the waterways.

Aqua Log, through its president, has located and removed two logs from the Flint River, using the Flint River to transport the logs. It has also removed one log from Spring Creek, using Spring Creek to transport that log. Aqua Log wishes to remove all of the submerged logs and sell them.

So, in August 2007, Aqua Log, invoking the court's admiralty[1] jurisdiction, brought three in rem actions[2] seeking a salvage award for the logs or, in the alternative, an award of title to the logs based on the American Law of Finds. The

---

[1] The terms "admiralty" and "maritime" are "virtually synonymous." Bryan Garner, *A Dictionary of Modern Legal Usage* 29 (2d ed. 1995). We therefore use the terms interchangeably.

[2] Case No. 11-15060 and Case No. 11-15076 involve the Flint River, while Case No. 11-15078 involves Spring Creek.

5

State of Georgia intervened and claimed ownership of the logs.  Georgia moved for summary judgment, arguing that the court lacks subject-matter jurisdiction because the Flint River and Spring Creek are not navigable waters.  The district court agreed and granted summary judgment in favor of Georgia.  Specifically, the court held that a waterway is only navigable for admiralty jurisdiction purposes when there is evidence of present or potential commercial activity on that waterway.  Finding that no commercial activity currently occurs on the Flint River and Spring Creek and that Aqua Log failed to present evidence of any planned commercial activity, the court determined that it lacked subject-matter jurisdiction and granted summary judgment in favor of Georgia.  Aqua Log appeals.

## II. ISSUES ON APPEAL

This appeal presents two issues:  first, whether the district court erred in requiring evidence of present or planned commercial activity on a waterway for it to be considered navigable for admiralty-jurisdiction purposes; and second, whether the Flint River and Spring Creek are navigable waterways.

## III. STANDARD OF REVIEW

Georgia raised the issue of subject-matter jurisdiction in its motion for summary judgment.  Subject-matter jurisdiction, however, is more appropriately addressed in a motion to dismiss pursuant to Federal Rule of Civil Procedure

6

12(b)(1).  As a result, we will treat the district court's grant of summary judgment for lack of subject-matter jurisdiction as a dismissal under Rule 12(b)(1).  *See United States v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d 1098, 1101 n.7 (11th Cir. 1998) (treating a district court's grant of summary judgment for lack of subject-matter jurisdiction as a dismissal under Rule 12(b)(1)).  We review de novo the district court's dismissal for lack of subject-matter jurisdiction.  *Broward Gardens Tenants Ass'n v. U.S. Envtl. Prot. Agency*, 311 F.3d 1066, 1072 (11th Cir. 2002).

## IV. CONTENTIONS OF THE PARTIES

Aqua Log contends that the district court applied the wrong test to determine navigability and asks us to adopt a test that defines navigable waters as those waters that are merely capable of being used for commercial purposes.  If we adopt that test, Aqua Log contends, then the Flint River and Spring Creek are navigable waterways, and the district court has subject-matter jurisdiction.

Georgia, on the other hand, urges us to adopt the district court's test for navigability—that a waterway is navigable only if it currently supports commercial activity or if there is evidence of planned commercial activity on that waterway.  And because the Flint River and Spring Creek do not currently support commercial

activity and no such activity is planned, the district court properly concluded that the waterways are not navigable and that it lacked subject-matter jurisdiction.

## V. DISCUSSION

The Constitution delegates jurisdiction over admiralty cases to the federal courts. U.S. Const. art. III, § 2. This power is codified in 28 U.S.C. § 1333(1), which gives Article III courts "original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction." Federal admiralty jurisdiction extends to all navigable waters. *Ex parte Garnett*, 141 U.S. 1, 15, 11 S. Ct. 840, 843 (1891); Grant Gilmore, Jr. & Charles L. Black, *The Law of Admiralty* 31–32 (2d ed. 1975) ("[T]he admiralty jurisdiction of the United States extends to all waters, salt or fresh, with or without tides, natural or artificial, which are in fact navigable in interstate or foreign water commerce."). Thus, for a court to have admiralty jurisdiction, the body of water in question must be navigable. Both Aqua Log and Georgia agree that for the court to have admiralty jurisdiction in these in rem actions, the waterways where the res (the submerged logs) are located must be navigable.

Aqua Log seeks a salvage award for the submerged logs or, in the alternative, title to the logs. Aqua Log contends that if the court does not have admiralty jurisdiction, then it will not be able to pursue its claims, which are

8

unique to maritime law.  For the court to have admiralty jurisdiction, the Flint River and Spring Creek must be navigable.  Thus, we must decide (A) what test applies to determine the navigability of a waterway for admiralty-jurisdiction purposes and (B) whether the Flint River and Spring Creek meet that test.  We address each issue in turn.

### A.

We first consider what test applies to determine if a body of water is navigable for admiralty-jurisdiction purposes.[3]  The parties have not called to our attention any Eleventh Circuit precedent addressing this issue.

The district court defined navigable waters as those waters with evidence of present or potential commercial activity.   Relying on *Seymour v. United States*, 744 F. Supp. 1161 (S.D. Ga. 1990), the court reasoned that the purpose of admiralty jurisdiction is to promote and protect commercial activity and that, in the absence of such commercial activity, the federal interest in protecting and promoting commercial activity no longer exists.  And so, according to the district

---

[3] We note that the term "navigable" has different meanings in different contexts.  *Kaiser Aetna v. United States*, 444 U.S. 164, 170–72, 100 S. Ct. 383, 388–89 (1979).  In this case, we are concerned only with term as it used to establish the limits of the jurisdiction of the federal courts over admiralty and maritime cases.

9

court, admiralty jurisdiction should extend only to those waterways with present or planned commercial activity.

The district court's opinion is well-reasoned, but we respectfully disagree with the court's holding. And, we are not writing on a clean slate. We are bound by the Fifth Circuit's decision in *Richardson v. Foremost Ins. Co.*, 641 F.2d 314 (5th Cir. Apr. 1981), *aff'd sub nom. Foremost Ins. v. Richardson*, 457 U.S. 668, 102 S. Ct. 2654 (1982). The Fifth Circuit decided *Richardson* on April 2, 1981, and under our precedent, Fifth Circuit cases decided before October 1, 1981, bind us. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

In *Richardson*, the Fifth Circuit addressed whether a tort claim based on a collision between two pleasure boats on a waterway that was "seldom, if ever, used for commercial activity" fell within the federal courts' admiralty jurisdiction. 641 F.2d at 315–16. The court noted that for admiralty jurisdiction to exist in a tort case, two requirements must be met: (1) there must be a significant relationship between the alleged wrong and traditional maritime activity (the nexus requirement) and (2) the tort must have occurred on navigable waters (the location requirement). *Id.* at 315. Concluding that both requirements had been met, the Fifth Circuit held that the district court had admiralty jurisdiction over the tort claim. *Id.* at 316. The court determined that the nexus requirement had been met

10

because boats "are engaged in traditional maritime activity when a collision between them occurs on navigable waters." *Id.* As to the location requirement, the court concluded that the tort occurred on navigable waters even though the waterway was seldom, if ever, used for commercial activity. *Id.* Specifically, the court said:

> We note additionally from the record that the place where the accident occurred is seldom, if ever, used for commercial activity. That does not cause us to vary from our holding. . . . It would be introducing another note of uncertainty to hold that admiralty jurisdiction extends only to a stretch of navigable water that presently functions as a commercial artery. . . . If the waterway is capable of being used in commerce, that is a sufficient threshold to invoke admiralty jurisdiction.

*Id.* We are bound by this holding.[4] And the fact that *Richardson* considered whether admiralty jurisdiction extends to a tort case does not change this conclusion. Whether in a tort case or in a salvage case, the waterway at issue must be navigable.

---

[4] The Fifth Circuit's definition of navigability is a holding. A holding is both the result of the case "and those portions of the opinion necessary to that result." *United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (quoting *Seminole Tribe of Fla. v. Florida.*, 517 U.S. 44, 67, 116 S. Ct. 1114, 1129 (1996)). The Fifth Circuit concluded that the district court erroneously dismissed the tort case for lack of subject-matter jurisdiction. To reach this result, it had to determine that both requirements for admiralty jurisdiction over tort cases—the nexus and location requirements—were met.

11

Neither Georgia nor the district court undertakes to distinguish this holding in *Richardson*.[5]  Instead, Georgia and the district court rely on cases from three of our sister circuits that they argue support a test for navigability that requires evidence of present or potential commercial activity.  Specifically, they point to the Seventh Circuit's decision in *Chapman v. United States*, 575 F.2d 147 (7th Cir. 1978) (en banc), the Eighth Circuit's decision in *Livingston v. United States*, 627 F.2d 165 (8th Cir. 1980), and the Ninth Circuit's decision in *Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir. 1975).  Georgia and the district court read these cases as adopting a test for navigability that requires current commercial activity.  But each case also contains language that suggests they adopt a test for navigability that looks to whether the waterway at issue is simply capable of supporting commercial activity.  *See Livingston*, 627 F.2d at 169–70 ("[T]he concept of 'navigability' in admiralty is properly limited to describing a *present capability* of waters to sustain commercial shipping." (emphasis added)); *Chapman*, 575 F.2d at 151 ("We hold that a recreational boating accident does not give rise to a claim within the admiralty jurisdiction when it occurs on waters that . . . are not in fact used for commercial navigation and are *not susceptible* of such use in their present

---

[5] While we agree with the district court that *Richardson* primarily focused on the nature of the action and actors, *Richardson* nevertheless addressed the character of the water where the tort occurred and we are bound by that holding.

12

state." (emphasis added)); *Adams*, 528 F.2d at 439 ("A waterway is navigable provided that it is used or *susceptible of being used* as an artery of commerce." (emphasis added)).

Nevertheless, even if these cases are understood to mean what the district court and Georgia suggest, there is substantial precedent to the contrary in our sister circuits. *See Cunningham v. Dir., Office of Workers' Comp. Programs*, 377 F.3d 98, 108 (1st Cir. 2004) (noting that for admiralty-jurisdiction purposes, navigability is understood to describe a present capability of a waterway to sustain commerce); *LeBlanc v. Cleveland*, 198 F.3d 353, 359 (2d Cir. 1999) (looking to whether the waterway is "presently used, or is presently capable of being used, as an interstate highway for commercial trade" in determining whether it is navigable); *Price v. Price*, 929 F.2d 131, 134 (4th Cir. 1991) (adopting a test that considers whether the body of water at issue is capable of supporting commercial activity); *Finneseth v. Carter*, 712 F.2d 1041, 1044 (6th Cir. 1983) (considering whether the waterway "is used or capable or susceptible of being used as an interstate highway for commerce" when deciding whether it is navigable).

On appeal, Georgia argues that a test for navigability that looks to whether there is evidence of current or planned commercial activity on the waterway strikes the appropriate balance between protecting commercial maritime activity and

13

respecting the ability of the states to regulate their own affairs by not applying substantive maritime law (which applies when admiralty jurisdiction is invoked) in the absence of actual commercial activity.

While sound policy reasons support the test proposed by Georgia, the navigability test announced in *Richardson* is supported by equally sound policy.  A test for navigability that looks to whether a waterway is capable of supporting commercial activity promotes and encourages maritime commerce.

The primary focus of maritime law is to protect and encourage commercial maritime activity.  *See Sisson v. Ruby*, 497 U.S. 358, 367, 110 S. Ct. 2892, 2898 (1990) ("The fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" (quoting *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S. Ct. 2654, 2658 (1982))).  When admiralty jurisdiction is invoked, a uniform body of federal maritime law applies.  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206, 116 S. Ct. 619, 623 (1996) ("With admiralty jurisdiction . . . comes the application of substantive maritime law." (quoting *E. River S.S. Corp. v. Transamercia Delavel Inc.*, 476 U.S. 858, 864, 106 S. Ct. 2295, 2298–99 (1986))).  This body of law serves to protect commercial activity by ensuring that uniform rules of conduct are in place.  *Exec. Jet Aviation, Inc. v. City*

*of Cleveland*, 409 U.S. 249, 269–70, 93 S. Ct. 493, 505 (1972).  The Supreme

Court has said:

> The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go.  That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters.  When a collision occurs or a ship founders at sea, the law of admiralty looks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe.  Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure.  It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage.

*Id.*  Finding admiralty jurisdiction when a waterway is capable of supporting

commercial activity creates a "climate conducive to commercial maritime

activity."  *Finneseth*, 712 F.2d at 1046.  That is, commercial activity could begin

on such a waterway and immediately have uniform rules in place without having to

determine whether commercial activity currently takes place on that waterway.

Moreover, a test for navigability that requires actual commercial activity is

unpredictable and is therefore not conducive to maritime commerce.  If actual

commercial activity is the test, the application of substantive maritime law

becomes contingent on the presence or absence of commercial activity.  *Price*, 929

F.2d at 133–34 ("Rules governing conduct on navigable waters cannot remain

uniform or have any certainty if their applicability is dependent on whether, on any

15

given day, commercial maritime activity is being conducted on the waters.").  A test that requires evidence of actual or likely commercial activity fails to provide the predictability that encourages maritime commerce.  And predictability in the courts is valuable.

We are mindful that the *Richardson* test may expand admiralty jurisdiction into waterways that may never be used for commercial maritime activities. However, the broad federal interests in protecting and promoting maritime commerce justify this potential encroachment.  "If the waterway is capable of being used in commerce, that is a sufficient threshold" to conclude that it is navigable for admiralty-jurisdiction purposes. *Richardson*, 641 F.2d at 316.

## B.

We next address whether the Flint River and Spring Creek are capable of supporting commercial activity and are therefore navigable waters.  We easily answer this question because both Aqua Log and Georgia agree that the Flint River and Spring Creek are capable of supporting commercial activity.  (*See* No. 11-15078, Dkt. 43-1 at 3; No. 11-15076, Dkt. 60-11 at 2; No. 11-15060, Dkt. 65-19 at 2.)  Therefore, we conclude that these are navigable waters for admiralty-jurisdiction purposes.

16

## VI. CONCLUSION

Because the segments of the Flint River and Spring Creek at issue in these cases are capable of supporting commercial activity, they are navigable waters for admiralty-jurisdiction purposes. We therefore hold that the district court erred in concluding that the waterways are not navigable and dismissing these cases for lack of subject-matter jurisdiction on that ground.[6]  Accordingly, we reverse and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

[6] The district court decided it lacked subject-matter jurisdiction solely on the basis that the Flint River and Spring Creek are not navigable waters. We express no opinion on whether there are any other requirements necessary for its claims to fall within federal admiralty jurisdiction.

17