[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13508
_____

D.C. Docket No. 1:13-cv-21588-JLK

DAVID MIDDLETON,
d.b.a. Foodservice Specialty Marketing,
a.k.a. Specialty Marketing,

Plaintiff-Counter Defendant-
Appellant,

versus

M/V GLORY SKY I,
a 219.8' cargo vessel, VIN 7523996 Call Sign 3EKX4,
flying the Panamanian flag, in rem,

Defendant-Counter Claimant-
Appellee,

FOFO TRANSPORT INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 28, 2014)

Before HULL, BLACK and FARRIS,[*] Circuit Judges.

PER CURIAM:

This admiralty case arises from the alleged maritime conversion of 3,800 fifty-pound bags of black beans owned by David Middleton.  The district court, adopting a magistrate judge's report and recommendation, concluded that Middleton's allegations did not establish a tort on navigable water and that the court therefore lacked subject-matter jurisdiction over Middleton's claims.  Upon review and with the benefit of oral argument, we affirm the district court's dismissal.

## I.  BACKGROUND[1]

The essential facts of the case are straightforward.  In August 2011, Emile Destin agreed to store 5,500 fifty-pound bags of black beans owned by Middleton at a warehouse Destin operated through Fo Fo Import-Export Retail, Inc. (Fo Fo Import) in Hialeah, Florida.  After a series of authorized distributions from the warehouse, 3,800 bags remained.  Then, in either October or early November 2011, Middleton learned that Destin had removed the remaining 3,800 bags and

---

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1] Because the district court resolved Middleton's claims under the assumption that his allegations are true, we will likewise assume the truth of Middleton's allegations in our recitation of the facts and in our ensuing analysis.

2

intended to transport them for sale in Haiti.[2]  Destin had taken the beans from the warehouse to the M/V GLORY SKY I, a ship Destin operated through Fo Fo Transport, Inc. (Fo Fo Transport), where it was docked on the Miami River. Middleton met Destin aboard the GLORY SKY on November 7, 2011, and demanded he return the beans, but Destin refused.  Ultimately, the beans were shipped to Haiti and sold to an undisclosed third party without compensation to Middleton.

On June 26, 2012, Middleton sued Fo Fo Import and Destin in state court for breach of contract and civil theft, obtaining a default judgment of $228,000.  On May 3, 2013, Middleton commenced the instant action in federal court against the GLORY SKY in rem.  Middleton sought and obtained arrest of the GLORY SKY pursuant to Rule C(3)(a)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture.  The GLORY SKY responded with an emergency motion for a hearing requiring Middleton to show cause why the court should not vacate the arrest of the GLORY SKY for lack of subject-matter jurisdiction.  On July 14, 2013, Middleton filed an amended complaint.  The magistrate judge scheduled a hearing for July 19, 2013, but, before the hearing commenced and

---

[2] Middleton's operative complaint alleged that a Fo Fo Import employee told him they had been taken on or about October 20, 2011, while other evidence he submitted indicates that he learned the beans had been taken through a series of e-mails on November 3-4, 2011.  For our purposes, it makes no difference whether he learned the beans had been removed on October 20 or November 3.

3

without taking any evidence, determined that even assuming Middleton could prove all of his allegations, no maritime tort occurred.  As a result, no admiralty jurisdiction existed.  The district court eventually adopted the magistrate judge's reasoning, vacated the arrest of the GLORY SKY, and dismissed Middleton's claim for lack of subject matter-jurisdiction.  Middleton filed a timely appeal.[3]

## II.  STANDARD OF REVIEW

The magistrate judge issued the report and recommendation that formed the basis of the district court's dismissal of Middleton's claims following a show-cause hearing.  However, the magistrate judge received no evidence and performed an analysis functionally equivalent to review of a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Accordingly, we will treat the district court's order as a dismissal under Rule 12(b)(1) and review it de novo.  *See Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Rafts of Logs*, 709 F.3d 1055, 1058 (11th Cir. 2013).

## III.  DISCUSSION

"'[A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity.'"  *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 900 (11th Cir. 2004)

---

[3] On December 5, 2013, this Court entered an order denying Appellees' motion to dismiss for lack of appellate jurisdiction and holding that the district court's order of dismissal is immediately appealable under 28 U.S.C. §§ 1291 and 1292(a)(3).

(quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048 (1995)).  The condition of location, which asks whether the alleged tort occurred "on navigable water," is at issue in this appeal. *See Broughton v. Fla. Int'l Underwriters, Inc.*, 139 F.3d 861, 865 (11th Cir. 1998).

In the instant case, Middleton alleged the tort of conversion.  "In the admiralty context, as elsewhere, conversion is simply an intentional and wrongful exercise of dominion or control over a chattel, which seriously interferes with the owner's rights in the chattel."[4]  *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 94 (1st Cir. 1993) (emphasis removed); *see also* Restatement (Second) of Torts § 222A (1965).  In this context, admiralty jurisdiction "depends on whether the [converted] chattel was 'on navigable waters' at the time of the alleged wrongful exercise of dominion."  *Evergreen*, 4 F.3d at 94.

Destin removed Middleton's beans from the warehouse in Hialeah without permission and with the intent to take them to Haiti and sell them.  This act constituted a conversion because it was an unauthorized, intentional, and substantial interference with Middleton's ownership of the beans.  *See id.*  Because no other acts were necessary to satisfy the elements of a conversion, Destin's

---

[4] The question whether admiralty jurisdiction applies to Middleton's claim implicates choice-of-law questions.  *See Aqua Log*, 709 F.3d at 1061 ("When admiralty jurisdiction is invoked, a uniform body of federal maritime law applies.").  However, admiralty law occasionally analogizes and refers to principles of state law, *see In re Dearborn Marine Serv., Inc.*, 499 F.2d 263, 277 n.27 (5th Cir. 1974), and the parties have not indicated, nor are we aware of, any differences between federal law and Florida law that bear on the outcome of this appeal.

5

conversion of the beans was complete at the time he first removed the beans from the warehouse. *See Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007) ("[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action." (internal brackets and quotation marks omitted)). Consequently, Destin converted the beans in the warehouse, not on navigable water, and Middleton must point to some other conversion that occurred on navigable water to establish admiralty jurisdiction.

In the operative complaint, Middleton alleged that it was Destin's refusal to return the beans during the November 7, 2011, meeting aboard the GLORY SKY that "effectively brought the vessel into the conversion."[5] Middleton argues that the operative conversion "took place . . . when the [GLORY SKY], through Destin, refused Middleton's demand to return the beans." However, demand is not an element of conversion, and Destin therefore did not commit a new conversion when he refused to return the beans. *See Senfeld v. Bank of N.S. Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984) ("[W]hile a demand and refusal constitute evidence that a conversion has occurred, it is unnecessary to prove a demand and refusal where the conversion can be otherwise shown."); *see also* 8A Am. Jur. 2d *Bailments* § 74 ("[T]he elements of demand and refusal are not required if other evidence establishes an act of conversion."). Destin had

---

[5] Middleton did not allege in his complaint, nor did he argue in his brief on appeal, that the GLORY SKY was liable for conversion committed by Fo Fo Transport.

already converted the beans when he removed them from the warehouse, and any subsequent refusal to return them was merely a reassertion of his already-completed conversion.

Because Destin's refusal established no new liability in him, there was no maritime liability arising from this act in which the GLORY SKY could share. *See Lamb v. Interstate S.S. Co.*, 149 F.2d 914, 916 (6th Cir. 1945) ("It is true that the owner of a vessel is liable in personam and the vessel is liable in rem for injuries done to persons by the negligence of the Master or crew, but the negligence *must be such as would make the owner of the vessel under the same circumstances, liable in a suit at common law*." (emphasis added)).

On appeal, Middleton asserts an additional theory that the GLORY SKY committed a new, maritime conversion when Destin loaded the converted beans onto it. Although we readily accept Middleton's repeated assertion of the GLORY SKY's separate legal identity, *see Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 22-23, 80 S. Ct. 1470, 1473 (1960); *Canadian Aviator v. United States*, 324 U.S. 215, 224, 65 S. Ct. 639, 644 (1945), this does not mean, nor does Middleton cite any authority establishing, that the GLORY SKY can be liable for a tort even when its operator has not committed one. "The general rule in respect of *torts committed by the master or crew* of a vessel is that, apart from the personal liability of tortfeasors, the vessel is liable *in rem* . . . ." 1 Benedict on Admiralty § 176

7

(Joshua S. Force ed., 7th ed. rev. 2013) (footnotes omitted) (emphasis added).  The GLORY SKY, though a separate legal entity under maritime law, *see Cont'l Grain*, 364 U.S. at 22-23, 80 S. Ct. at 1473, could only act *through Destin*.  As a consequence, it could not re-appropriate the beans for its own purposes and thereby commit a new conversion separate from Destin's.  Instead, by loading the beans onto the GLORY SKY, Destin only furthered his already-completed conversion that had taken place on land.  The only acquisition of the beans with intent to acquire a proprietary interest in them occurred at the warehouse.  Thus, a new, maritime conversion did not occur when the beans were loaded onto the GLORY SKY.[6]

## IV.  CONCLUSION

In light of the foregoing, we conclude that the district court did not err in dismissing Middleton's claims for lack of subject-matter jurisdiction.[7]

**AFFIRMED.**

---

[6] Under Middleton's view, conversions invariably give rise to admiralty jurisdiction if the tortfeasor ever loads the converted property onto a ship he controls, even if this occurs long after and far removed from the actual conversion of the property.  This result undermines the situs prong of the test for admiralty jurisdiction and uses the fictional separateness of a ship in admiralty to expand the reach of admiralty jurisdiction to torts that are otherwise entirely land based.

[7] Middleton also asserted a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201.  However, the Declaratory Judgment Act does not provide an independent basis for federal jurisdiction.  *Provident Life & Accident Ins. Co. v. Transamerica-Occidental Life Ins. Co.*, 850 F.2d 1489, 1491 (11th Cir. 1988).  Accordingly, the lack of subject-matter jurisdiction over Middleton's conversion claim requires dismissal of his declaratory-judgment claim for the same reason.